Filed 3/26/21  P. v. Grandberry CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>ERNEST RONDELL GRANDBERRY,<br><br>     Defendant and Appellant. | B305238<br><br>Los Angeles County<br>Super. Ct. No. A388090-02 |

APPEAL from an order of the Superior Court of Los Angeles County, William C. Ryan, Judge.  Reversed and remanded.

Emry J. Allen, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and Michael J. Wise, Deputy Attorneys General, for Plaintiff and Respondent.

_____

In 1983 Ernest Rondell Grandberry pleaded guilty to first degree murder as well as two felony sex crimes. He admitted a firearm enhancement. In accordance with Grandberry's plea agreement with the People, the court sentenced him to 27 years to life in the state prison. In 2019, after the Legislature passed Senate Bill No. 1437 (SB 1437), Grandberry filed a petition for resentencing under Penal Code section 1170.95.[1] The trial court denied the petition, stating Grandberry was ineligible for relief because (1) he "acted with a reckless indifference to human life and was a major participant in the [felonies underlying the murder]," and (2) "he, with the intent to kill, aided and abetted the actual killer in the commission of murder in the first degree."

On appeal, the Attorney General agrees with Grandberry that we must return the case to the trial court for an order to show cause and an evidentiary hearing, because—in the Attorney General's words—"[a]lthough the facts overwhelmingly support the trial court's conclusion, the court may not actually weigh the facts without issuing an order to show cause and holding a section 1170.95, subdivision (d), hearing."

## FACTS AND PROCEDURAL BACKGROUND

1. ***The murder, attempted murder, sex crimes, and plea agreement***

In the wee morning hours of February 16, 1983, Coleen Hawkins and Azell Moore were sitting in Moore's parked car.[2] "[T]hree gun-wielding males" approached. They turned out to be

---

[1] References to statutes are to the Penal Code.

[2] As the trial court noted, "the factual record [in this case] is scant." The case settled before the preliminary hearing. We take the facts—as did the trial court—from the probation officer's report.

2

Grandberry, Bobby Ray Appleberry, and Barry Lee Brookins. The threesome ordered Moore to get out of the car and into the trunk. The three men got into the car along with Hawkins. As one of the men drove,[3] Appleberry forced Hawkins to orally copulate him.

About 20 minutes later, the perpetrators drove into a garage. "Moore was removed from the trunk. He was told to keep his head down and was robbed of his watch, wallet, money and a necklace. He was ordered back into the trunk . . . and was driven around on surface streets and freeways for approximately an hour and a half."

"During this time," the three perpetrators "sexually assaulted victim Hawkins, forcing her to orally copulate them and engage in sex acts with all three." At some point the car stopped and "Moore was removed from the trunk and told to start walking." Moore begged the men not to kill him. Moore then "felt a blow to the head and was rendered unconscious."

When Moore came to, he was on the grounds of a high school. He walked to a telephone and called the police. Moore was taken to a hospital. He had been shot and had surgery to remove bullet fragments from the back of his head. Moore spent nearly two weeks in the hospital.

Later that day, police saw Appleberry getting out of Moore's car, which had been reported stolen. Appleberry gave authorities information about "where the female victim of the kidnapping might be found." Police found Hawkins's body in a field, "dead of a gunshot wound to the head." Appleberry later admitted he'd shot her. He also implicated Grandberry.

---

[3]     The probation report states two of the men got into the front and one—Appleberry—got into the back, but it doesn't reflect who drove.

Grandberry "admitted his part in the kidnap, robbery and rape." Police later arrested Brookins, who admitted shooting Moore "because he wanted all of Moore's money."

The probation report stated that "although Grandberry fired no shots, all defendants were equally culpable in the death of Hawkins."

Grandberry and his co-defendants were charged with murder, attempted murder, robbery, kidnapping for robbery, forcible oral copulation in concert, forcible rape in concert, forcible oral copulation, and forcible rape.[4]  On April 28, 1983, before the preliminary hearing, all three defendants entered into plea agreements with the People.  Grandberry pleaded guilty to first degree murder, oral copulation in concert, and rape in concert.  He also admitted that he used a firearm within the meaning of section 12022.5.  In exchange, the prosecution agreed to strike the special circumstance allegations and dismiss the remaining counts.

As a factual basis for the plea, the prosecutor asked Grandberry if he was entering his plea "because you were involved in a situation where Coleen Hawkins was shot and killed, where Azell Moore was shot but not killed and where, in fact, you raped and orally copulated Coleen Hawkins on February 16, 1983?"  Grandberry answered, "Yes."

On June 3, 1983, in accordance with the plea agreement, the court sentenced Grandberry to 27 years to life in the state prison:  25 to life for Hawkins's murder plus two years for the use of a firearm.  The court imposed the midterm of seven years each

---

[4]     The record on appeal does not contain a copy of the felony complaint.

on the counts for forcible oral copulation in concert and forcible rape in concert, to be served concurrently with the murder count.

## 2.      *Grandberry's petition for resentencing and the trial court's decision*

On February 4, 2019, Grandberry filed a petition for resentencing under section 1170.95.  On a downloadable form, Grandberry checked boxes 1, 2b, 3, 4, 5 and its subboxes, and 8.  The trial court (the Honorable William C. Ryan)—noting that the Office of the Public Defender had represented Grandberry in the 1983 proceedings—reappointed that office to represent him.

On August 14, 2019, the district attorney filed a response to Grandberry's petition.  The prosecution devoted most of its response to arguing SB 1437 is unconstitutional.  The prosecution also contended Grandberry "intended to kill and was a 'major participant' who acted with a 'reckless indifference to human life' meeting the newly enacted section 189(e)."  The prosecution cited *People v. Banks* (2015) 61 Cal.4th 788 and *People v. Clark* (2016) 63 Cal.4th 522, and then applied the "five-part test" of *Banks* to the facts set forth in the probation report.  The prosecution argued the "facts clearly and logically indicate that petitioner was part of the planning and execution of all the criminal events that occurred and led to Ms. Hawkins' death. If he was not part of the planning, he had multiple opportunities to stop the events using his own firearm or flee from the events during their execution.  Not doing so and his willing and enthusiastic participation in the execution proves his involvement in the planning."

On November 13, 2019, the public defender filed a reply on Grandberry's behalf.  Grandberry argued SB 1437 is constitutional.  He then noted he did not shoot Hawkins or Moore and argued, in cursory fashion, that under *Banks* and *Clark*

5

"it is not clear . . . [he] was a 'major participant' who acted with a 'reckless indifference to human life.' "

On January 28, 2020, the trial court issued a memorandum of decision denying Grandberry's petition. Citing court of appeal cases decided after the parties had filed their pleadings, the court stated SB 1437 was constitutional. The court then recited the facts set forth in the probation report. Citing *Clark* and *In re Loza* (2017) 10 Cal.App.5th 38, 52, the court listed the "factors to consider in determining whether a perpetrator acted with reckless indifference to human life." The court concluded,

> "Here, the facts as established in the plea transcript placed Petitioner in a situation where he was armed with a firearm while raping and forcing Hawkins, the eventual murder victim, to orally copulate him in the back of a car. This took place while his co-defendants, Appleberry and Brookins, robbed and shot Moore, and raped and eventually shot and killed Hawkins. . . . Petitioner, for his part, admitted to being armed while being part of a 'situation where Coleen Hawkins was shot and killed, where Azell Moore was shot but not killed and where, in fact [he] raped and orally copulated Coleen Hawkins.' . . . [¶] Review of the record as established in the probation report makes Petitioner's involvement even more clear. Petitioner was one of the three armed men who robbed Moore at gunpoint and forced him into the trunk of his own car. Petitioner was physically present and armed during the lengthy crime. Petitioner had opportunities

6

to discontinue his involvement in the offense when they stopped the car and got Moore out of the trunk, robbed him of his belongings and placed him back in the trunk, and again when they took Moore out a second time and shot him in the head, leaving him for dead. If, for some reason, Petitioner was not already aware of that which his co-defendants were capable, at that point he was on notice that his co-defendants were prepared to kill the victims. Petitioner, himself armed, could have used his weapon to stop his co-defendants from carrying the crime any further; he did not. Petitioner could have rendered aid to the remaining victim; he did not. At any point, he could have determined it had been taken too far and used his own weapon in defense of the victims in an effort to stop the crime; he did not. Rather, Petitioner made no effort to minimize the risk of violence. Instead, by his own admission, he sat in the car and raped and forced Hawkins to orally copulate him during her final moments. [¶] Petitioner's acts of robbing Moore at gunpoint and raping and forcibly orally copulating the female victim, clearly show that Petitioner acted with a reckless indifference to human life and was a major participant in the underlying felonies. (§ 189, subd. (e)(3).) Petitioner's actions also illustrate that he, with the intent to kill, aided and abetted the actual killer in the commission of murder in the first degree. (§ 189, subd. (e)(2).) As Petitioner

still would have been convicted of first degree murder under the amended law (§ 1170.95, subd. (a)(3)), Petitioner is ineligible for relief pursuant to section 1170.95."

## DISCUSSION

On appeal, Grandberry—noting "there is no dispute that [he] was not the actual killer"—concedes he "was a 'major participant' in the underlying felonies." So, he says, his appeal "focuses on the 'reckless indifference to human life' element." Grandberry discusses the *Banks* and *Clark* factors. Agreeing he "and his two cohorts were armed," Grandberry argues "the evidence shows simply that the participants intended to rob the victims and sexually assault Hawkins." Grandberry acknowledges he and his co-defendants "held the victims for one and one-half hours or more." But, he continues, as to Hawkins "there is no evidence as to what occurred other than the fact that she was sexually assaulted and later killed." Grandberry argues, "The record is silent as to the actual facts of appellant's participation other than he participated in the sexual abuse of the victim. There is no evidence as to what if anything his actual participation in the murder entailed or if he was even present when the actual killing took place."

The Attorney General agrees with Grandberry that remand is appropriate. The Attorney General states, "Although the facts overwhelmingly support the trial court's conclusion, the court may not actually weigh the facts without issuing an order to show cause and holding a section 1170.95, subdivision (d),

8

hearing." Citing *People v. Drayton* (2020) 47 Cal.App.5th 965, 982,[5] the Attorney General notes that, "while the trial court's characterization of the *facts* was correct, there is no indication in the record that appellant was ineligible for relief *as a matter of law*. Therefore, the trial court should have issued an order to show cause and held an evidentiary hearing under section 1170.95, subdivision (d), to weigh the evidence and decide whether relief should be granted. The matter should be remanded for this proceeding to take place."

## DISPOSITION

As the parties essentially stipulate to a reversal and remand, we reverse the trial court's order denying Grandberry's petition for resentencing and remand the case for the trial court to issue an order to show cause and to proceed to an evidentiary hearing under section 1170.95, subdivision (d).


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**



EGERTON, J.

We concur:



EDMON, P.J.                          LAVIN, J.

---

[5] *Drayton* was decided April 17, 2020, nearly three months after the trial court issued its memorandum of decision. Accordingly, the trial court did not have the benefit of the *Drayton* court's guidance when it denied Grandberry's petition.

9